EXHIBIT C

# STATE OF MICHIGAN

## COURT OF APPEALS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
9/2/2015 3:40:17 PM
CHRISTOPHER A. PRINE
Clerk

DAVID SCHIED,

        Plaintiff-Appellant,

v

LEONARD REZMIERSKI, DAVID BOLITHO,
KATY DOERR-PARKER, NORTHVILLE
PUBLIC SCHOOLS BOARD OF EDUCATION,
LARRY CRIDER, ROBERT DONALDSON,
WARREN EVANS, JAMES D. GONZALES,
JAMES HINES, MARIA MILLER, BENNY N.
NAPOLEON, WAYNE COUNTY
PROSECUTOR'S OFFICE, WAYNE COUNTY
SHERIFF'S DEPARTMENT, KYM WORTHY,
JANE DOE, and JOHN DOE,

        Defendants-Appellees,

and

JANE DOE and JOHN DOE,

        Defendants.

UNPUBLISHED
January 22, 2013

No.  303715
Wayne Circuit Court
LC No.  09-030727-NO

---

Before:  BORRELLO, P.J., and TALBOT and WILDER, JJ.

PER CURIAM.

Plaintiff, acting in propria persona, appeals as of right, challenging the dismissal of his claims against (1) defendants Northville Public Schools Board of Education ("NPS") and three of its administrators, Leonard Rezmierski, David Bolitho, and Katy Doerr-Parker (collectively referred to as the "NPS defendants"), (2) the Wayne County Sheriff's Department, its former Sheriff Warren Evans, its present Sheriff Benny N. Napoleon, and two Sheriff's Department employees, Larry Crider and James Hines, and (3) the Wayne County Prosecutor's Office, Wayne County Prosecutor Kym Worthy, and assistant prosecutors Robert Donaldson, James Gonzales, and Maria Miller.  The court dismissed plaintiff's claims against the NPS defendant on summary disposition pursuant to MCR 2.116(C)(7) on the basis of res judicata, and dismissed plaintiff's claims against the remaining defendants (referred to collectively as the "Wayne

-1-

EXHIBIT C

County defendants") on summary disposition pursuant to MCR 2.116(C)(7) on the basis of governmental immunity. For the reasons set forth in this opinion, we affirm.

This action is one of a series of several state and federal lawsuits that plaintiff has filed arising from NPS's disclosure of an expunction order from the state of Texas. Plaintiff provided the expunction order after a criminal background check of plaintiff for purposes of employment with NPS, revealed that plaintiff had been convicted of aggravated robbery in Texas in 1977. Plaintiff provided the copy of the expunction order to NPS to document that the 1977 conviction had been expunged. NPS retained a copy of the expunction order in plaintiff's personnel file and disclosed it when another school district requested a copy of plaintiff's employment records after plaintiff executed a release authorizing the disclosure of his records. Since that time, plaintiff has brought several lawsuits against NPS and various other government officials.

In 2006, plaintiff brought an action against NPS in the Wayne Circuit Court in LC No. 06-633604-NO. Plaintiff sought an injunctive order requiring NPS to remove all information regarding the Texas conviction, pardon, and expunction from his employment records, and prohibiting NPS from keeping, maintaining, or sharing this information. The trial court concluded that no legal authority prohibited NPS from disclosing the expunction order, and that no relief was available to plaintiff for the disclosure. Accordingly, the court granted NPS's motion for summary disposition and dismissed plaintiff's claims.

In 2007, plaintiff brought another action against the state of Michigan, the Michigan Attorney General, several state departments, defendant NPS, defendants Bolitho, Doerr-Parker, Rezmierski, and other governmental defendants in the Ingham Circuit Court in LC No. 2007-001256. The trial court dismissed that action and that decision was affirmed on appeal. *Schied v State of Michigan*, unpublished memorandum opinion of the Court of Appeals, issued May 19, 2009 (Docket No. 282804).

In 2008, plaintiff filed a lawsuit in federal court against various government defendants from the United States Attorney's Office, the federal judiciary, the FBI, and the states of Texas and Michigan. The complaint contained numerous counts related to plaintiff's claims that the various defendants had conspired to deny him his rights. The court granted summary judgment for all parties on grounds of governmental immunity and failure to state valid claim.

Plaintiff filed another federal lawsuit in 2008 against various government officials, including Leonard Rezmierski, a defendant in this case, again stating various claims arising from the allegedly wrongful disclosure of the expunction order. The federal court, noting that the case was plaintiff's fourth lawsuit in connection with the disclosure of his Texas criminal record in his personnel file, granted summary judgment for defendant Rezmierski on the grounds of res judicata and collateral estoppel.[1]

---

[1] Plaintiff has brought other lawsuits in state and federal court tangentially related to the disclosure of the expunction order, including a lawsuit against NPS based on allegations that NPS retaliated against plaintiff by violating plaintiff's son's rights as a student.

EXHIBIT C

Plaintiff filed the present action in 2009. Plaintiff reiterates his allegations from prior lawsuits that the NPS defendants violated his rights and committed criminal acts by disclosing the expunction order. Plaintiff's claims against the Wayne County defendants are premised on plaintiff's attempts to initiate criminal proceedings against the NPS defendants.[2] Plaintiff alleges that the Wayne County Sheriff's Department and the Wayne County Prosecutor's Office have rebuffed his requests for a criminal investigation and criminal prosecution of the NPS defendants' conduct related to the disclosure of the expunction order, and refused plaintiff's demands to convene a grand jury.

Plaintiff's motion to disqualify the trial judge because she and her husband resided in Northville, her husband has a law practice in Northville, and both were involved in community activities there, was denied.[3] The trial court subsequently granted summary disposition in favor of each Wayne County defendant on the basis of government immunity. Thereafter, the court granted the NPS defendants' motion for summary disposition on grounds of res judicata and collateral estoppel.

The problem presented to this Court by this appeal lies mainly in our effort to ascertain the arguments put forth by plaintiff. To state that his briefs and documents are not in compliance with the rules of this Court is an understatement. Rather than setting forth clear and concise arguments, plaintiff has submitted to this Court hundreds of pages of meandering and frivolous assertions. However, in an attempt to discern plaintiff's arguments to whatever extent that is possible, we have re-stated plaintiff's claims in a manner from which we can arrive at a ruling on each of his perceived claims.

## I. DISQUALIFICATION OF TRIAL COURT

As he has done in virtually all other matters he has brought before federal and state courts, plaintiff argues that the trial judge was biased and prejudiced against him and, therefore,

---

[2] Plaintiff brought such a claim *after* being warned by the Sixth Circuit: "Schied is hereby warned that filing of further appeals claiming a right to criminally prosecute others for perceived transgressions will result in sanctions." *Schied v Snyder*, unpublished opinion of the Sixth Circuit Court of Appeals, filed January 19, 2011, slip op at 3 (Docket No. 10-1176).

[3] Claiming bias of the judge or tribunal assigned to hear his cases is another of plaintiff's repeated tactics. In *Schied v Daughtrey*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued March 25, 2009 (Docket No. 08-14944), the court, quoting *Shakespeare v Wilson*, 40 FRD 500, 502 (SD Cal 1966), stated that plaintiff fit the *Shakespeare* court's categorization of an angry and frustrated litigant who would "lash out at judges, attorneys, witnesses, court functionaries, newspapers and anyone else in convenient range, terming all of them corruptly evil and charging them with perjury and conspiracy in a last desperate effort to re-litigate the issues on which they have once lost and hoping to secure sizeable damages to boot." *Schied v Daughtrey*, slip op at 21.

EXHIBIT C

erred by denying his motion for disqualification. "In reviewing a motion to disqualify a judge, this Court reviews the trial court's findings of fact for an abuse of discretion and the court's application of those facts to the relevant law de novo." *Olson v Olson*, 256 Mich App 619, 638; 671 NW2d 64 (2003).

MCR 2.003(C)(1)(a) provides grounds to disqualify a judge when the "judge is biased or prejudiced for or against a party or attorney." The party challenging a judge on the basis of prejudice "must overcome a heavy presumption of judicial impartiality." *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996). Bias or prejudice is defined as "'an attitude or state of mind that belies an aversion or hostility of a kind or degree that a fair-minded person could not entirely set aside when judging certain persons or causes.'" *Id.* at 495 n 29, quoting *United States v Conforte*, 624 F2d 869, 881 (CA 9, 1980). "Disqualification on the basis of bias or prejudice cannot be established merely by repeated rulings against a litigant, even if the rulings are erroneous." *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009). Remarks that are critical of or hostile toward a party are generally not sufficient to establish bias. *Id.* The bias must be both "personal and extrajudicial," such that "the challenged bias must have its origin in events or sources of information gleaned outside the judicial proceeding." *Cain*, 451 Mich at 495.

In *In re Contempt of Henry*, 282 Mich App 656, 679; 765 NW2d 44 (2009), this Court reiterated the standards for overcoming the presumption of judicial impartiality, stating:

> Generally, a trial judge is not disqualified absent a showing of actual bias or prejudice. *Gates v Gates*, 256 Mich App 420, 440; 664 NW2d 231 (2003). The mere fact that a judge ruled against a litigant, even if the rulings are later determined to be erroneous, is not sufficient to require disqualification or reassignment. *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 554; 730 NW2d 481 (2007). "[J]udicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a "'deep-seated favoritism or antagonism that would make fair judgment impossible'" and overcomes a heavy presumption of judicial impartiality." *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001) (citations omitted).

Here, plaintiff failed to any bias or prejudice. Plaintiff's argument consists mainly of his expression of outrage that he still has not obtained the relief he believes he deserves for the disclosure of the expunction order. To the extent that plaintiff even presents a cogent argument, he has not established grounds for disqualification. Plaintiff relies on the fact that the trial judge lives in Northville, where her husband also has a law practice, and that both are involved in community activities in Northville. These allegations involve circumstances that are personal and extrajudicial, hence, they do not support plaintiff's claim of bias. The mere fact that a judge has ties to the same community where a defendant is located does not establish actual bias or prejudice.

Plaintiff's contention that the trial judge, like all other judges previously involved in plaintiff's various lawsuits, is motivated to side with the government defendants and rule in their favor in blatant disregard of the facts and applicable law is not supported by any objective facts.

-4-

EXHIBIT C

The affidavits from the "court-watchers" describe ordinary courtroom procedures and do not provide factual support for plaintiff's claims of biased persecution. The mere fact that the judge's judicial rulings were adverse to plaintiff also does not establish bias. *In re MKK*, 288 Mich App at 566; *In re Contempt of Henry*, 282 Mich App at 679. Plaintiff has been unsuccessful in his efforts to disqualify prior judges who ruled against him, and he has not demonstrated that the judge's rulings in this case, apart from being adverse to plaintiff, display a "'deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Id.* Accordingly, plaintiff's motion for disqualification was devoid of merit and therefore properly denied.

## II. GRANT OF SUMMARY DISPOSITION

A. Plaintiff's complaint is barred by res judicata and collateral estoppels.

Plaintiff also argues that the trial court erred in granting summary disposition in favor of the NPS defendant and the Wayne County defendants. The trial court granted summary disposition in favor of the parties on the basis of res judicata and governmental immunity, both of which are bases for summary disposition under MCR 2.116(C)(7). *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 417; 733 NW2d 755 (2007) (res judicata); *Herman v Detroit*, 261 Mich App 141, 143; 680 NW2d 71 (2004) (governmental immunity). This Court reviews de novo a trial court's decision on a motion for summary disposition. *Washington*, 478 Mich at 417. The application of a legal doctrine, such as res judicata or collateral estoppel, is also subject to de novo review. *Id.* The applicability of governmental immunity is a question of law that is also reviewed de novo on appeal. *Herman*, 261 Mich App at 143.

In reviewing a ruling pursuant to subrule (C)(7), this Court "consider[s] all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them." *Fane v Detroit Library Comm*, 465 Mich 68, 74; 631 NW2d 678 (2001). "If the facts are not in dispute and reasonable minds could not differ concerning the legal effect of those facts, whether a claim is barred by immunity is a question for the court to decide as a matter of law." *Poppen v Tovey*, 256 Mich App 351, 354; 664 NW2d 269 (2003)

The trial court determined that the NPS defendants were entitled to summary disposition on the basis of res judicata and collateral estoppel. The doctrine of res judicata bars a subsequent action between the same parties when the first action was decided on its merits, the second action was or could have been resolved in the first action, and both actions involve the same parties or their privies. *TBCI, PC v State Farm Mut Auto Ins Co*, 289 Mich App 39, 43; 795 NW2d 229 (2010). The doctrine of collateral estoppel precludes a party from subsequently asserting a claim when "(1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) the same parties had a full and fair opportunity to litigate the issue, and (3) there was mutuality of estoppel." *Estes v Titus*, 481 Mich 573, 585; 751 NW2d 493 (2008). "Mutuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action." *Monat v State Farm Ins Co*, 469 Mich 679, 683; 677 NW2d 843 (2004) (citation and internal quotations omitted). However, "the lack of mutuality of estoppel should not preclude the use of collateral estoppel when it is asserted defensively to prevent a party from relitigating

-5-

EXHIBIT C

an issue that such party has already had a full and fair opportunity to litigate in a prior suit." *Id.* at 691-692.

Here, plaintiff has brought prior actions against the NPS defendants or their privies arising from the same factual circumstances as this 2009 action, the allegedly tortious or as plaintiff couches it, "criminal disclosure" of the expunction order. Plaintiff brought an action against NPS in 2006 in Wayne Circuit Court No. 06-633604-NO, which ended in the trial court's order of summary disposition in favor of NPS. In 2007, plaintiff brought an action against NPS and defendants Bolitho, Doerr-Parker, and Rezmierski, which similarly ended in summary disposition for defendants. In 2008, plaintiff filed a lawsuit in federal court in which Rezmierski was named as a defendant. That case also ended in summary judgment for all defendants. The essential facts pertaining to plaintiff's claims in these other cases are identical to those raised in this action. The NPS and each individual NPS defendant was a defendant in at least one of these prior actions. The prior actions were decided on the merits, and plaintiff had the opportunity to assert any legal theory in support of his claim for relief. These circumstances satisfy the requirements of res judicata and collateral estoppel. *Estes*, 481 Mich at 585; *TBCI*, 289 Mich App at 43. Plaintiff asserts that disclosure of the expunction order to another recipient in response to a request under the Freedom of Information Act constitutes a new violation of his rights, but the 2006 action seeking an injunction resolved on the merits the issue whether NPS was prohibited from disclosing the document. Accordingly, the trial court properly granted summary disposition to the NPS defendants under MCR 2.116(C)(7), on the basis of res judicata and collateral estoppel.

B. Plaintiff's complaint is barred by governmental immunity.

The trial court granted summary disposition for Wayne County defendants on grounds of governmental immunity. Plaintiff's claims against the Wayne County defendants arise from their failure to investigate plaintiff's criminal complaints against the NPS defendants. The trial court granted summary disposition for the Wayne County defendants on grounds of governmental immunity. The governmental immunity statute, MCL 691.1407 provides, in pertinent part:

> (1) Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

EXHIBIT C

(a)  The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b)  The governmental agency is engaged in the exercise or discharge of a governmental function.

(c)  The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

(3)  Subsection (2) does not alter the law of intentional torts as it existed before July 7, 1986.

* * *

(5)  A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

* * *

(7)  As used in this section:

(a)  "Gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

Thus, MCL 691.1407(1) broadly exempts government agencies from tort liability if the agency is engaged in the discharge of a governmental function.  A "governmental function" is an activity expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law.  MCL 691.1401(f); *Maskery v Univ of Mich Bd of Regents*, 468 Mich 609, 613-614; 664 NW2d 165 (2003).  This definition is to be broadly applied. *Id.*  It only requires that there be some constitutional, statutory, or other legal basis for the activity in which the agency was engaged.  The definition of governmental function necessarily means that activities unauthorized by law are not immune. *Richardson v Jackson Co*, 432 Mich 377, 381; 443 NW2d 105 (1989); *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 620; 363 NW2d 641 (1984).  The determination whether an activity involves a governmental function must focus on the general activity, not the specific conduct involved at the time of the tort. *Tate v City of Grand Rapids*, 256 Mich App 656, 661; 671 NW2d 84 (2003).

The claims against the Wayne County Prosecutor's Office and the Wayne County Sheriff's Department involve the exercise or discharge of those agencies' governmental functions of investigating and prosecuting allegations of criminal conduct.  Accordingly, those agencies are immune under MCL 691.1407(1).  Defendants Wayne County Prosecutor Worthy, current Wayne County Sheriff Napoleon, and former Wayne County Sheriff Evans, as the elective executive officials of their respective levels of government, are each entitled to absolute immunity because their alleged conduct relates to the investigation or prosecution of the NPS defendants, and thus is within the scope of their executive authority.  MCL 691.1407(5); *Bischoff*

EXHIBIT C

*v Calhoun Co Prosecutor*, 173 Mich App 802, 806; 434 NW2d 249 (1988). See also, *Grahovac v Munising Twp*, 263 Mich App 589, 595; 689 NW2d 498 (2004).

With respect to assistant prosecutors Donaldson, Gonzales, and Miller, Michigan recognizes quasi-judicial immunity for prosecutors. *Id*. "Where a prosecutor's actions are within the scope of his prosecutorial functions and duties, his acts are quasi-judicial in nature and he has absolute immunity regarding the performance of those functions and duties." *Payton v Wayne Co*, 137 Mich App 361, 370-371; 357 NW2d 700 (1984) (citations and internal quotations omitted). This Court in *Payton* recognized that Michigan law upholds the policy of "protecting the prosecutor's independence of judgment from harassment due to the constant threat of potential litigation." *Id*. at 371. The assistant prosecutors' actions in reviewing plaintiff's reports of criminal conduct in this case clearly come within their quasi-judicial functions. Plaintiff's claims against them are therefore barred by governmental immunity.

Finally, sheriff's department employees Crider and Hines are entitled to immunity unless they acted outside the scope of their authority, or their conduct amounted to gross negligence. MCL 691.1407(2). It was within the scope of Crider's and Hines's authority to decide whether to pursue criminal charges against the NPS defendants, and there are no allegations or facts indicating that either engaged in conduct that could be considered gross negligence, i.e., "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(7)(a). Accordingly, they too are entitled to governmental immunity.

## III. CRIMINAL ALLEGATIONS

Plaintiff also challenges the trial court's dismissal of his various claims asserting that he is a crime victim entitled to relief through the criminal justice system. We agree that dismissal of those claims was warranted under MCR 2.116(C)(5) (party asserting a claim lacks the legal capacity to sue) and (8) (failure to state claim a claim for relief). It is well-settled law that "in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution or another." *Linda RS v Richard D*, 410 US 614, 619; 93 S Ct 1146; 35 L Ed 2d 536 (1973). Thus, a private citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution. *Id*. See also *People v Herrick*, 216 Mich App 594, 600-601; 550 NW2d 541 (1996) (citing *Linda RS* for the proposition that a statute authorizing citizens to seek an arrest warrant does not "grant a corresponding right to have charges filed and prosecuted pursuant to the warrant"). As previously stated and cited, plaintiff is aware of this well-settled tenet of American jurisprudence. Accordingly, we hold that plaintiff lacks standing to compel the initiation of a criminal investigation or prosecution against any defendant, and incorporate in our ruling the same warning given to plaintiff by the Sixth Circuit.

Affirmed. Defendants having prevailed are entitled to costs. MCR 7.219.

/s/ Stephen L. Borrello
/s/ Michael J. Talbot
/s/ Kurtis T. Wilder